Good morning. It is particularly an honor for our court to have sitting again with us this year, Justice Sandra Day O'Connor. And for Judge Smith and myself, it is a particular privilege to be with a role model for all of us. Thank you very much. Thank you. I'm glad to be here. And we also, I want to acknowledge that we have with us today Professor Susan DeJarnatt of the Temple University Beasley School of Law, with two people from Temple. Welcome to you as well. And we'll have, we have two cases this morning. The first is Stone v. the New Jersey Administrative Office of the Courts et al., number 12-3910, Mr. Duffy and Ms. Scott. Justice O'Connor, Judge Ambrose, Judge Smith, may it please the court, amongst the chief... Do you wish to reserve any time for rebuttal? Yes, sir. I reserve five minutes. That's fine. Okay. Amongst the chief duties of the courts are to protect people who are relatively powerless in the political process. That duty, in this case, was abandoned by the New Jersey courts, and they do not have sufficient process in place to make sure that people with mental disabilities get the kind of help they need from guardians or attorneys. What was Mr. Stone seeking? He saw it in the, what, the first action or the second action, a guardian ad litem, is that correct? In both, Your Honor. In both, and one was appointed in what, the first or the second? Second one, sir. And then the court, what made the court decide to tell that person he no longer needed to serve as the guardian? He ordered Dr. Hankins' psychiatric report, and despite the fact that that says Roger will not be able to effectively and proportionately access the court system... Well, no, wait a minute. That is not what the report says. In fact, I found this especially interesting about this report, which I read several times. First of all, the report makes clear that there was no evidence of a major psychiatric disorder. Those are Dr. Hankins' words. But the very conclusion, which you've just paraphrased, in fact says, I conclude with a reasonable degree of medical certainty that he cannot effectively and proportionately use the legal system to resolve his conflicts with his brother. What does that mean? I mean, among other things that the court system is good at, it's not especially good at resolving intrafamily conflict. Is that what the doctor meant here? I don't think so. He was doing a psychiatric exam, and my reading on what he did was he was being very judicious, and he didn't have a lot of information. He clearly could have looked at the client's prescriptions in the house, because this psychiatric exam happened in the front yard, and I tagged him a little bit and said, like, why didn't you go look at the medicines? I think what he did was he said, like a lot of judges do, I've seen enough. But the judge did appoint a guardian ad litem, and it was after reading this report and after whatever observations the New Jersey trial court made that he decided that the guardian ad litem's fiduciary services were no longer needed. Is that right? That's correct, as far as I understand. So that's classic abuse of discretion stuff for purposes of the state courts, isn't it? I would say so if Roger had any ability to appeal or file an interlocutory appeal. Had I been his lawyer, I would file an interlocutory appeal right away. But like Judge Swain says in Blatch v. Hernandez, what good is this going to do? The people are already mentally ill. I doubt Roger knows what an interlocutory appeal is. And, you know, something should have been done, especially since we have the In Re MR case, which makes us liable for ethics charges if we're the guardian and the attorney at the same time. So if I have this correct, there were two suits. I guess the first one that his brother sued, and that was resolved by, what, a default judgment? Yes. And the second one, was there an order entered against your client? Most certainly, yes. And with regard to the dismissal of the guardian, was that done by an order or what? I have the docket like you do, Your Honor, in the pages here, and I do not see that there's an order, there isn't a lot of description. I'm not clear on what it is that Mr. Stone is seeking in this case. Having read the complaint, I'm wondering what exactly is the unlawful policy here for which the complaint seeks a remedy? Because some of the averments in the complaint seem to me to really sound in allegations of error in the conduct of state court proceedings. On the other hand, some of the allegations seem to be an attack upon state policy or an assertion that the state lacked policies. So what is it? Well, I can't remember the name of the case, but Justice Scalia wrote an opinion, I think it's about accessing library materials for prisoners, and he said in there, well, you've got to prove that you would have won your habeas, I don't think he said won, but that you had a good shot at your habeas appeal before. So I put that stuff in there because of that case and just general theories of standing. I think the complaint says that. I'm putting this in not because to prove that any judgment was wrong or needs to be overturned or anything, but just to simply show constitutional standing that we allege that things would have been much different if they had procedures in place to make sure that people get guardians or some kind of other helper. It doesn't have to be an attorney. There's a program called CASA, which is a – Well, but the state court judge here did, in the second action anyway, appoint a guardian ad litem. So it's not like there was no policy in existence or no resources in existence. There was the appointment. It was simply that the trial court made the determination right or wrong that the guardian ad litems services were no longer required based on his understanding of the condition of your client. I mean, isn't that actually what happened here, right or wrong? Well, my understanding is that the administrative office of the courts in the state can be responsible for discriminatory orders of a judge. George Lane was told, get up the stairs or else. He did it the first time, the second time, another order. He was held in contempt. It's clear there was an order, and there was no problem suing the state. My colleague who filed that case didn't even bother suing the judge, who, by the way, passed away about two years ago. So when you're suing the state, you're saying your policies are no good. Look at what your minions are having done here. They're ordering people up the stairs. They're, you know, they're not even engaging in an interactive process or anything or referring people to the ADA coordinator like the first judge. Was there a request for interactive process here? I think so. You know, Rogers said he needed help. Basically what he wanted was a guardian and then an attorney. And he had the guardian, then the guardian was dismissed, and I guess the attorney or whatever fees there were, his brother had to pay, correct? That is correct. That's a separate case in New Jersey. But in New Jersey, was there anything mentioned to the New Jersey courts about the New Jersey disability laws not being complied with? I doubt it. I don't think that's part of the case. Roger knows his rights to some extent, but he just isn't mentally capable. He probably mentioned the ADA at some point. But there's nothing in the record that he did. But, you know, he doesn't remember a lot of these because of his medications and things. You sought damages in your complaint. What are they for? Well, I realize you probably can't get the $26,000, you know, that he was. . . What are the damages prayed for? Just simply like George Lane's damages, just for the sheer ignominy of being treated like a subhuman. By whom? By whom? By the court system, by not helping him to have a proper. . . A system doesn't treat people. Individuals treat people particular ways. I mean, who specifically treated him with disrespect? There's no rules about how to handle this situation at all, really. The rule that's in effect, it doesn't really give any guidelines. There's a couple of cases. There's a wide dispersal. So it's the AOC's policies. There are some judges who would have done a great job. There are judges who wouldn't do anything. And then there's judges like the second judge who tried to muddle through, did a much better job. But they don't have an understanding of what mental illness is. And they should have gotten, you know, better help to help him present his case to the court. I seem to be out of time. Why don't we hear from Ms. Scott and get you back on rebuttal. Thank you. Good morning, Justice O'Connor, Judge Ambrose, Judge Smith. May it please the Court, Deputy Attorney General Susan Scott, on behalf of the New Jersey Administrative Office of the Courts, vis-a-vis one of the New Jersey Superior Courts of the State of New Jersey. So your first argument, and I guess it's what the district court did, is saying that this is a, there is no subject matter jurisdiction for the district court under the Rooker-Feldman Doctrine. Is that correct? Yes, Your Honor. And I guess the district court did a belt and suspenders. If it's Rooker-Feldman and it doesn't have subject matter jurisdiction, but if it does have subject matter jurisdiction, it dealt with the claim on the merits under 12B6. Is that correct? Yes, Your Honor. And so, doesn't Rooker-Feldman not apply to actions of administrative agencies? I mean, there's a Supreme Court case for rise in Maryland versus Public Service Commission of Maryland. It's a Supreme Court case from 2002. In footnote 3, it appears that Rooker-Feldman doesn't apply to administrative actions of agencies. That may be correct, Your Honor, but this wasn't an administrative agency action. This was a judicial determination made by sitting judges in the New Jersey Superior Court, and judicial determinations are subject to the Rooker-Feldman Doctrine. They're the precise cases where Rooker-Feldman does apply. Was there anything about partition or waste that he's actually asking the district court to deal with? That's what the actions were in the state court level, correct, on the merits? His brother was suing for waste and then a partition of the former home? I believe that was the one action. It was both the partition of the home and the waste. The other action was the abusive process. The first action was the abusive process, right, that he lost. Right. And then the second action was the waste action. Yes. You're right. And to me, why isn't this case similar to the Marks case from the Sixth Circuit, that you're really asking for you're saying that there is a problem and that the state court system didn't accommodate me, but as the Sixth Circuit noted, there are different issues involved, and if there's different issues involved, it's not necessarily a state court loser asking a federal court to look at those particular state court claims that were adjudicated in the first and the second actions. I think, Your Honor, this case is more akin to the Doris v. State of New Jersey out of this court, this circuit, and that's 500 Federal APPX 98 issued in October 2, 2012. And in that case, that plaintiff also said that the judge's actions violated the ADA, and this court said that in that case specifically, the ADA did not require courts to provide legal counsel to persons with disabilities, and that whether counsel should have been appointed is a matter that could have been litigated in an appeal. In this case, I think it's equally applicable to the guardian ad litem issue as well. That's one issue. I've had some difficulty with this complaint because to me it seems like there may be two tracks or two tracks of allegations. One averring that there is a lack of, there are certain policies that do not exist or certain policies that have not been followed by the State of New Jersey, which were not issues in the underlying two state actions. On the other hand, there are averments about the appointment or non-appointment of legal counsel, the appointment and dismissal of the guardian ad litem, the treatment of Mr. Stone by a trial judge during one of the proceedings, which seem to me to sound more in state process and be issues for state appeal. Is that a fair way of looking and characterizing this complaint? I agree, Your Honor. I did, when I was looking at the complaint, try to figure out what it was plaintiff was seeking. To the extent that it asserts some sort of process claims or policy claims, I think that the complaint and the proposed amended complaint fail. The problem, the reason that we can't put our hand on what process or what policy plaintiff is alleging violates the ADA or the Rehabilitation Act or NJ LAD is because he doesn't state it. His complaint is devoid of facts sufficient to support a policy claim. He doesn't say what policy it is. So that's 12B6 grounds, right?  Failure to state a claim. Isn't that really your stronger argument as opposed to 12B1? I think in our briefing we did argue the fail to state a claim first, and then we argued Rooker-Feldman, and then the district court even did it in the reverse as well. But I think you can't get to 12B6 if you said that Rooker-Feldman. If you don't have subject matter jurisdiction. Correct. So, as I said, it was pretty much belt and suspenders here. I agree that the stronger argument is the failure to state a claim. Because? Because the complaint is devoid of facts sufficient to support such a claim. To support the claim that the judge did it wrong, that puts you squarely under Rooker-Feldman. To say the judge got it wrong, he should have either entertained his request or shouldn't have taken away the guardian's right in the second case, that puts you squarely under Rooker-Feldman. To consider the complaint as raising policy claims, it doesn't allege any facts to support such claims. We don't know what policy he's challenging. He said in his oral argument just now, some judges would have done it great, some judges would have done it worse. Well, at one point he suggests that judges need training to be understanding and appreciative of mental conditions. Does he not? I think that's a conclusion. He doesn't say any facts to support why judges would need training on that. What happened here that would result in a finding that they deserve training? It would have to be a consideration of whether the judge improperly decided his motion for guardian ad litem. Or a point to a policy that says, you know, this is how you do it. What we have is the court rule, and there's the allegation that the judge followed the court rule but then took the guardian ad litem away. Was it one of your arguments that there's immunity from suit? I don't think that was raised as a brief point in our moving papers. I hope it was. On the merits with regard to the, let's just run through them, the ADA procedures, your argument is essentially what? That the plaintiff failed to state a claim. Because there's no private right of action regarding these procedures, or what? No, because even if the plaintiff had alleged a disability, he didn't allege that he was denied any services. So he's, in effect, not alleging any injury? Yes. Okay. And then what about the failure to communicate rights under the ADA? He has not alleged any facts to support that. He simply asserts that there's no signage. He doesn't, there's no other facts. The complaint, and the admitted complaint, are completely devoid of any facts to support that claim. Okay. Any questions? I have one. If the district court did not commit an error in dismissing the suit for lack of subject matter jurisdiction, didn't the district court err in dismissing the suit with prejudice? Why doesn't it have to allow correction, if need be? I didn't see the with prejudice dismissal. I looked through the court's opinion, and I didn't see the words with prejudice. I understood that it was with prejudice. Okay. The district court did. They did. In other words, they decided that there was no subject matter jurisdiction, but, in effect, if there were subject matter jurisdiction, that they'd lose loss on the merits. And the point is that you don't get to the second one if you don't have subject matter jurisdiction. That's why I said belt and suspenders. Right. Right. So, yes, I'm sorry, Justice O'Connor. If the court erred on the Rooker-Feldman issue, then the dismissal on the 12B6 should be without prejudice. Yes. Yes. Thank you. Thank you. Any further questions? Thank you. Thank you. We'll hear back from Mr. Duffy. And maybe we can deal with some of the issues on the merits, because first point is let's just take the ADA procedures. Is there any private right of action regarding those procedures? Some courts have said yes. Some courts have said no. I make a point of mentioning the rules and then say if these rules are not privately enforceable, it's absolutely clear that they're absolutely essential for the ADA to function, that they have to be right. But wouldn't the New Jersey law against disabilities cover everything that the ADA does, and why wouldn't that suit be brought in New Jersey? Well, we brought it as a pendant action. The ADA seemed more applicable. This case seems like Lane and Marks, and it has the due process access of U.S. and Goodman against Georgia, and that's why we brought it in federal court. But I would like to agree with Justice O'Connor that I asked at the very end of the brief, if you're going to dismiss for Rooker-Feldman, send us back, and we'll take advantage of the 30-day refiling period like they did in Pasco v. Council. It had some other name when it was up here that one of the plaintiffs dropped out. But you said, you know, this is too much state stuff. And I see what Judge Smith is talking about. If you really feel that there's too much state involvement here, we should let Jersey wash its own dirty laundry, you know, I'm not going to be upset about that. That's a valid view. It's just that, you know, we found that the New Jersey courts are very retaliatory, if nothing else. We'd really rather not go there. They, you know, they've written threatening letters, you know, filed ethics complaints that were held to be meritless. I mean, various things that they've done and any engagement with them I'd rather avoid. Thank God I'm a tax attorney because I don't have to go to state court. I just do this pro bono work here. I'm serious. You know, I don't really want to engage them. And in the file you have the one letter that was written by the second-in-command at the AOC where she lost it apparently because I'd been suing them too much or something. But if I could make a few substantive points, you know, this complaint is about lack of ADA process. There's two, and there's, the ADA says you can do almost anything, just get the person some help. First of all, both of these judges should have referred him to the ADA coordinator, who I have pretty good faith. Remember, by chance, at the end of the thing, Roger ran into the ADA coordinator, Roger told him what happened, and the guy said, boy, I'm going to write the judge an email. That's just fortuitous. But he apparently, he says he wrote the judge an email and said, I really think you ought to reinstate the guardian, and you ought to think very seriously about some kind of help, which, by the way, doesn't have to be an attorney. There's these CASA volunteers and everything. It also has some of the same no-notice requirements that the Sixth Circuit was upset about in Marx, that Roger doesn't always write someone if there had been any signs, like, if you want help for, you know, that has to do with due process or whatever. I'm sure he would have gone to the ADA coordinator because, after all, it's kind of intimidating to go to a judge, which is one of the other things in the complaint. I mean, if the judge turns you down for an ADA request, what do you got to do? You got to file a complaint against the judge. That's really inappropriate. And when I did it one time, the judge filed a complaint against me. So it was held to be meritless. But, you know, we would like better due process in the ADA. Both of these judges could have sent the case to the ADA coordinator, let them do the job. If you'd like to look at a statement. But did anybody ask for the judge to do that? No. These people didn't know that. There's no notices in the courthouse or anything. If you want to see a statement that's doing it right, please look at California's Rule 1.100. That has totally ex parte ADA coordinators. And the judges are told, this isn't your problem. Because, after all, giving somebody a lawyer may be seen as improper. I think that's what our Jersey judges are worried about. They don't know what to do. Because they don't want to help somebody and get an ethics charge. As far as the ADA procedures having no injury, this whole case is because they didn't follow ADA procedures. He's out of his house. And that's the way we see the case, that there's no procedures. And, again, it looks like I'm out of time. All right. No, it's fine. Thank you very much. Thank you to both counsel. We'll take the matter under advisement.